**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| W. SILVER RECYCLING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-00837 JAR |
| ) | |
| NIDEC MOTOR CORP., ) | |
| ) | |
| Defendant. ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Plaintiff / Counterclaim Defendant W. Silver Recycling,

Inc.'s ("WSR") Motion to Dismiss First Amended Counterclaims of Defendant / Counterclaim

Plaintiff Nidec Motor Corporation ("Nidec"). (Doc. 39). The motion is fully briefed and ready for

disposition. For the reasons discussed below, the motion will be granted in part.

I.      **BACKGROUND**

This Court has previously summarized the relevant background facts in this case:

> On August 31, 2018, [WSR] and [Nidec] executed a Scrap Management Agreement
> (the "Agreement"). (Doc. 1 at ¶ 12; Doc. 4-1). Pursuant to the Agreement, WSR
> would process and purchase scrap metal created as a by-product of Nidec's
> manufacturing at seven facilities until August 31, 2021. (Doc. 1 at ¶¶ 12-14). On
> April 16, 2020, Nidec informed WSR that, specifically as to the Nidec
> Laminaciones de Acero SA de CV facility ("NLA"), Nidec was "aggressively
> looking to improve revenue and is prepared to test the market." (*Id.* at ¶ 40). WSR
> promptly replied that the parties "are of course under contract," and NLA "falls
> under the contract." (*Id.* at ¶¶ 41-42). On June 9, 2020, Nidec informed WSR that
> it "no longer requires" WSR's scrap management services at NLA. (*Id.* at ¶ 43).
> Nidec is currently selling the NLA scrap metal to the buyer who preceded WSR
> while allegedly continuing to utilize WSR's equipment. (*Id.* at ¶¶ 46-47).

WSR proceeded to bring this action against Nidec alleging breach of contract, breach of implied

covenant of good faith and fair dealing, and negligent misrepresentation. Specifically, WSR

claimed that the Agreement established an exclusive arrangement which Nidec violated by terminating services at NLA. Nidec sought dismissal on the grounds that the Agreement lacked any exclusivity provision. On December 24, 2020, this Court dismissed WSR's breach of contract claims because the "fully integrated Agreement is entirely silent as to exclusivity, and there is no specific contractual language permitting this Court to find ambiguity as a matter of law." (Doc. 17 at 15). *See generally W. Silver Recycling, Inc. v. Nidec Motor Corp.*, No. 4:20-CV-837 JAR, 2020 WL 7695706 (E.D. Mo. Dec. 24, 2020). WSR's claims for breach of implied covenant of good faith and fair dealing and negligent misrepresentation remain present in the case.

On April 6, 2021, Nidec filed a First Amended Counterclaim making two breach of contract claims. (Doc. 37). First, in Count I, Nidec estimates $266,000 in damages due to WSR's alleged failure to comply with its obligation to guarantee highest prices available pursuant to Exhibit B, ¶ 10 of the Agreement. (*Id.* at ¶¶ 27-33). In Count II, Nidec claims that WSR has breached its indemnification obligations under Exhibit A, Article 1 of the Agreement by failing to indemnify Nidec for the cost of this suit. (*Id.* at ¶¶ 34-43).

## II.    LEGAL STANDARD

When ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), this Court must "accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To survive this motion to dismiss, the counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not necessary at this stage, Nidec's obligation to provide the grounds of its entitlement to relief

"requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. Dismissal is warranted, moreover, if Nidec's claims are "fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young*, 244 F.3d at 627 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

## III.   DISCUSSION

Count I: Breach of Contract – Failure of Guaranteed Pricing

*Interpreting the Guaranteed Price Provision*

The Agreement incorporates Exhibit B, "Special Terms and Conditions," in which WSR agrees to various practical obligations in its performance of the scrap metal recycling services. WSR promises, for example, to provide timely reports and forecasts, meet all environmental legal requirements, and provide safety seals for the trailers. (Doc. 4-1 at 7). In its First Amended Counterclaim, Nidec alleges that WSR has breached ¶ 10 of Exhibit B (hereinafter, the "Guaranteed Price Provision"), which states in its entirety:

> Guarantee highest prices available for scrap material through continual improvements in freight rates, handling/segregating ideas, new and competitive end users.

Nidec claims that it "determined that WSR was not providing the highest prices for scrap recycling based on a review of quotes received from others and comparable pricing at other facilities." (Doc. 37 at ¶ 20). In its motion to dismiss, WSR argues that the Guaranteed Price Provision simply "obligates WSR to provide Nidec with the best prices WSR could provide, not to match the best price offered to Nidec by a third party." (Doc. 40 at 5). Nidec essentially responds that WSR's interpretation would render any obligation illusory and, alternatively, the Court should deny the motion to dismiss because the Guaranteed Price Provision may be ambiguous. (Doc. 45 at 6-9).

Under Missouri law, a breach of contract claim requires the following elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010) (citation omitted). The issue is whether WSR breached the Guaranteed Price Provision by allegedly failing to provide the "highest prices available" in the scrap metal market accessible to Nidec's facilities. Once again, the parties offer entirely different interpretations of a seemingly straightforward provision. *See W. Silver Recycling*, 2020 WL 7695706, at *2 ("The Agreement is brief . . . [y]et the parties offer two entirely different interpretations of [its] purpose."). WSR views the Guaranteed Price Provision more like an obligation to use best efforts to improve prices by continually improving services. Nidec interprets the provision more formally as an obligation to match industry prices.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973); *see also Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. banc 2012). When interpreting a contract, it is the court's "role [ ] to determine the intention as manifested not by what the parties say now they intended but by the document." *Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir. 1984). In certain instances, however, the parties' chosen terms will render their true intentions ambiguous, and parol evidence may be necessary to ascertain the contract's meaning. *See Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 702-03 (Mo. Ct. App. 2019). A contract is ambiguous "only if its terms are susceptible to more than one meaning so that reasonable [persons] may fairly and honestly differ in their construction of the terms." *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001) (citation omitted). The existence of ambiguity is a question of law. *See Kennebrew*, 379 S.W.3d at 846.

This Court finds that the Guaranteed Price Provision is ambiguous and declines to dismiss Nidec's breach of contract claim as a matter of law. As emphasized by Nidec, the provision explicitly provides that WSR must "[g]uarantee highest prices available." This Court recognizes that it "may not read into a contract words which the contract does not contain." *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 913 (8th Cir. 2020) (citation omitted). A reasonable, plain-language interpretation of the Guaranteed Price Provision is that it obligates WSR to guarantee the highest scrap prices available in the industry. *See Deal v. Consumer Programs, Inc.*, 458 F. Supp. 2d 970, 975 (E.D. Mo. 2005) (citation omitted) ("When a contract uses plain and unequivocal language it must be enforced as written.").

But other elements of the Agreement render it uncertain whether Nidec's interpretation truly reflects the parties' intentions at the time of contracting, and "[w]hether an ambiguity exists depends on the context of the agreement." *Sherman v. Deihl*, 193 S.W.3d 863, 866 (Mo. Ct. App. 2006) (citation omitted). The Guaranteed Price Provision itself only states WSR would guarantee high prices "through continual improvements," such as by increasing freight rates and identifying new end users. Article 2.2 provides that WSR will pay Nidec in accordance with prices identified in Exhibit C, an extensive schedule of highly specific scrap prices, and fails to mention any matching of industry prices.

The question before this Court is whether the Guaranteed Price Provision requires WSR to "[g]uarantee highest prices available" in the industry as a whole or to the best of its ability based on continuous improvement efforts. Considering the plain language of the Guaranteed Price Provision and the entire Agreement's context, this Court finds that reasonable people could disagree as to the proper interpretation. Therefore, the Guaranteed Price Provision is ambiguous, and parol evidence may be necessary to determine the true intentions of the parties. *See Yerington*

*v. La-Z-Boy, Inc.*, 124 S.W.3d 517, 520 (Mo. Ct. App. 2004) (citation omitted) ("[A]mbiguity exists if reasonable people may fairly and honestly differ in the readings of the terms because the terms are susceptible of more than one meaning."). This ambiguity creates a question of fact which this Court cannot resolve on a motion to dismiss. *See U.S. Neurosurgical, Inc. v. Midwest Division-RMC, LLC*, 303 S.W.3d 660, 665 (Mo. Ct. App. 2010) (citation omitted).

*Notice of Termination*

WSR also argues that dismissal is warranted because Nidec "failed to comply with the required steps of providing WSR with a 30-day cure period and notice prior to terminating WSR, as it was required to do under Article 4 of Exhibit A of the Agreement." (Doc. 39 at ¶ 15). In granting Nidec's motion to dismiss in part, this Court specifically held that there had "been no termination event triggering the provisions of Article 4." (Doc. 17 at 15). It evidently bears repeating that, per this Court's previous holding, Nidec's decision to cease utilizing WSR at NLA did not terminate the Agreement because the parties did not have an exclusive arrangement. This Court is not aware of another contractual provision requiring notice of a breach when there is no termination.[1] Therefore, the motion to dismiss will be denied as to Count I.

Count II: Breach of Contract – Failure to Indemnify

The Agreement incorporates Exhibit A, "Additional Terms and Conditions," in which WSR agrees to the following indemnification provision:

**ARTICLE 1: Indemnity.** [WSR] will indemnify [Nidec] and its subsidiaries, affiliates, successors and assigns against and [sic] all losses, damages, liabilities,

---

[1] Regardless, Nidec specifically alleges in its Amended Counterclaim that it "noticed that WSR's pricing for scrap at [NLA] was not the highest price." (Doc. 37 at ¶ 21). WSR responds that this notice, which was provided by e-mail to WSR's Chief Executive Officer, was inadequate under Exhibit A, Article 15 of the Agreement. The section provides that notices "will be sufficient if contained in a written instrument delivered in person or send [sic] by email . . . with confirming copy sent by registered or certified mail." It is unclear whether this section identifies the exclusive method of notice or, alternatively, one potential method of notice which the parties agree would be sufficient.

costs and expenses (including reasonable attorney's fees and other costs of defending any action) ("Losses") which such parties may sustain or incur in connection with its enforcement of this Agreement or as the result of any claim based upon the theory of negligence by [WSR] except to the extent that the Losses are solely caused by [Nidec], its subsidiaries, affiliates, successors or assigns. [WSR] agrees that it will, when requested and given reasonable notice of the pendency of any such suit, claim or demand, assume the defense of [Nidec] and its subsidiaries, affiliates, successors or assigns against any such suits, claims or demands. [Nidec] shall remain solely responsible for any environmental conditions existing on its property to the extent the environmental conditions were not caused by [WSR].

The question before this Court is whether this indemnification provision requires WSR to indemnify Nidec for the costs of this lawsuit. WSR argues that the provision only applies to suits involving third-parties, as evidenced by the assumption of defense language. Nidec responds that WSR offers an unduly narrow interpretation of the broad indemnification provision.

An indemnity clause is a contractual provision in which "one party agrees to answer for any specified or unspecified liability or harm that the other party might incur." *Praetorian Ins. Co. v. Site Inspectors, LLC*, 604 F.3d 509, 515 (8th Cir. 2010) (citation omitted). Under Missouri law, the rules applicable to construction of contracts also apply to indemnity agreements. *Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 786 (8th Cir. 2004) (citation omitted). An indemnification clause is enforceable if it is clear and unequivocal, applies to the claim in question, and the agreement was not signed under duress. *Id.* (citation omitted). Generally, sophisticated business entities like the parties to this suit "require less precision in the terms of the indemnity clause, and it is irrelevant whether the businesses bargained for the provision." *Praetorian*, 604 F.3d at 515.

Typically, Missouri courts "do not interpret indemnity clauses as permitting recovery of attorneys' fees in a suit between the contractual parties for breach of contract." *Monarch Fire Prot. Dist. of St. Louis Cty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*, 678 F. Supp. 2d 927, 939 (E.D. Mo. 2009) (citing *Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 109 (Mo. banc

2003)), *aff'd*, 644 F.3d 633 (8th Cir. 2011). But parties are "free to contract around this general rule" as long as the indemnity clause "***expressly provides***" for the recovery of such expenses. *St. Anthony's Med. Ctr. v. Nat'l Serv. Indus., Inc.*, No. 4:09-CV-844 HEA, 2011 WL 4600671, at *5 (E.D. Mo. Oct. 3, 2011) (emphasis added) (citations omitted). "Although indemnification suits typically arise in the context of third-party claims, Missouri law does not require it." *Praetorian*, 604 F.3d at 516 (citation omitted).

In controlling precedent, the Eighth Circuit has predicted that the Missouri Supreme Court "would require an indemnity clause to contain express language *referencing litigation between the parties* before interpreting it to allow a party to recover attorneys' fees incurred in an action asserting its rights under the contract." *Monarch Fire Prot. Dist. of St. Louis Cty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 638 (8th Cir. 2011) (emphasis added). The court affirmed the district court's holding that an indemnification provision referencing claims "arising out of . . . any other breach of the terms of this Agreement" did not expressly reference litigation between the parties. *Id.* at 637. The Eighth Circuit approvingly cited *Weitz Co., LLC v. MacKenzie House, LLC*, where the court enforced the indemnity provision in a suit between the parties because it expressly provided for recovery "if it became necessary for either party to institute legal proceedings against the other party." No. 07-0103-CV-W-ODS, 2010 WL 1839118, at *2 (W.D. Mo. May 6, 2010).

Nidec argues that the indemnity provision's reference to losses "in connection with its enforcement of this Agreement" covers fees incurred in this action. In *Lee v. Investors Title Co.*, also cited by the Eighth Circuit in *Monarch Fire*, the parties' agreement used similar language, requiring indemnification for costs the party "shall suffer or incur or become liable for . . . in connection with its enforcement of its rights under this Agreement." 241 S.W.3d 366, 368 (Mo.

Ct. App. 2007). The *Lee* court held that the indemnified party was entitled to attorneys' fees because it "prevailed on every allegation brought by or against it." *Id.* Other courts applying Missouri law, however, have required more specific language for an indemnity clause to cover litigation between the parties. *See Jacobson Warehouse Co., Inc. v. Schnucks Markets, Inc.*, No. 4:17-CV-00764 JAR, 2020 WL 853736, at *9 (E.D. Mo. Feb. 20, 2020), *appeal filed* No. 20-1690 (8th Cir. Apr. 2, 2020) (provision permitting fees for "all claims . . . in connection with [ ] any breach of any of their respective obligations under this Agreement" did not apply to litigation between the parties); *Are JYL Dairy Partners, LLC Summit Trust Co. v. Crow*, No. 11-3090-CV-S-RED, 2012 WL 12897105, at *1-2 (W.D. Mo. Mar. 26, 2012) (provision permitting fees "incurred any way in connection with the Account" did not apply to litigation between the parties).

In a vacuum, a reasonable argument could be made that losses "in connection with [ ] enforcement of this Agreement" include legal fees incurred in an action between the parties. But the indemnification provision in the Agreement also provides that "when requested and given reasonable notice" WSR will "assume the defense of [Nidec]" against "any such suits, claims, or demands." Obviously, WSR cannot be expected to assume Nidec's defense in an action against itself. Nidec describes this language as a "second, separate contractual obligation regarding assumption of defense." (Doc. 45 at 13). Yet it appears in the same indemnification section and refers to "such suits, claims, or demands," suggesting that the costs contemplated by WSR's indemnification obligation refer exclusively to third-party suits where WSR may be asked to assume Nidec's defense. *See Monarch Fire*, 644 F.3d at 638 ("The same language typically should be given the same meaning in neighboring paragraphs of a contract, and it follows that the duty to indemnify . . . like the duty to defend . . . does not apply to actions between the parties."); s*ee also*

*Herion Co. v. Taney Cty., Mo.*, 514 S.W.3d 620, 625 (Mo. Ct. App. 2017) ("It is the primary rule of construction of contracts that a contract must be construed as a whole.").

At minimum, this assumption of defense language creates confusion and runs counter to the Eighth Circuit's requirement that parties employ express language to overcome the presumption that indemnity provisions apply only to third-party claims. WSR's motion to dismiss will be granted as to Count II of the Amended Counterclaim because the indemnification provision does not expressly and unequivocally apply to breach of contract actions between the parties.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff / Counterclaim Defendant W. Silver Recycling, Inc.'s Motion to Dismiss First Amended Counterclaims of Defendant / Counterclaim Plaintiff Nidec Motor Corporation (Doc. 39) is **GRANTED in part** and **DENIED in part.** The motion is granted as to Count II but denied as to Count I.

**IT IS FURTHER ORDERED** that Count II of Nidec's First Amended Counterclaim is hereby **DISMISSED**.

Dated this 26th day of May, 2021.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE